Filed 7/31/13  P. v. Lucero CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ERNESTO LUCERO,<br><br>    Defendant and Appellant. | G046841<br><br>(Super. Ct. No. 10CF2760)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Lance Jensen, Judge.  Affirmed as modified.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, A. Natasha Cortina and Kelley Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

Ernesto Lucero was found guilty of attempted murder, carjacking, and aggravated assault. The jury found true allegations he committed these offenses using a deadly weapon (Pen. Code, § 12022, subd. (b)(1) & (2)),[1] and he inflicted great bodily injury (§ 12022.7, subd. (a)). The court sentenced Lucero to an aggregate prison term of 34 years and 4 months. On appeal, Lucero contends there are four different sentencing errors. We conclude, and the Attorney General concedes, two of his claims have merit. Lucero's remaining two arguments relate to alleged section 654 errors. We conclude one has merit, and we modify the judgment accordingly. Finding his other argument meritless, we affirm the remainder of the judgment.

I

Early one August morning, Lucero was in the Albertson's parking lot on Chapman Avenue in the City of Orange. He appeared to be dirty and homeless, wearing mismatched baggy clothes and having disheveled hair.

At first, Lucero stood near the entrance to the grocery store and spoke to several people. Michael Pitts recalled Lucero asked for a cigarette and then offered to buy one for $1. Pitts said Lucero told him he was waiting for a check but did not answer when Pitts asked where he worked. Pitts stated Lucero admitted he smoked marijuana that morning and their conversation made Pitts feel uncomfortable. Pitts believed Lucero was "messed up on something."

Robert Drake bought Lucero a few bags of groceries and they prayed together for a few minutes that morning. Drake recalled Lucero seemed preoccupied and he looked continuously into the parking lot. After learning about a carjacking, Drake went back to the store and saw Lucero had not eaten any of the groceries.

After spending nearly two hours at the front of the store, Lucero moved and went to stand by a tree in the parking lot. Shortly thereafter, Lucero approached Anne

---

[1] All further statutory references are to the Penal Code.

Spangenberg and demanded a dollar as she was putting groceries into her car. When she told him "No," using a "defensive tone," he slowly backed away towards the tree.

Lucero next approached Kim D.[2] as she loaded her groceries into the trunk of her car. Kim saw Lucero walking towards her at a fast pace and she recalled feeling very uneasy about it. She tried to quickly finish putting her groceries into the car. Kim realized she was not going to get all the groceries in the car quickly enough, so she grabbed her purse from the cart and put her keys in her right hand. She opened her car door and tried to get inside. But it was too late.

Lucero gave her an intense stare and said something like, "Can I have a dollar." Initially, Kim pulled her purse closer. When Lucero was approximately four feet away, Kim took her keys and purse and threw the items either on the ground or at Lucero and said, "'If that's what you want, take it.'" Kim said Lucero lunged at her, punching her chest. Kim did not see a knife. Lucero got into Kim's car and drove away. Kim felt lightheaded and dropped to her knees.

A bystander, Rita Griffitts, saw Lucero approach Kim, and saw Kim hold her hands in a crisscross position on her chest and shake her head as if to indicate, "No." Griffitts did not see how Lucero got Kim's keys, but she saw Lucero punch Kim in the chest. Griffitts said, "'Hey'" after she saw Lucero punch Kim, and she recalled Lucero looked scared or startled.

Pitts also saw Lucero walk up to Kim and speak briefly before she handed Lucero her keys. Pitts stated he thought Kim's actions did not look right. Next, Pitts saw Lucero strike Kim in the chest. Pitts was certain Kim gave Lucero the keys "before" he struck her. Pitts went inside the store and announced there was a carjacking and mugging. He then ran to Kim's car, but by that time Lucero was inside and had locked all the doors. Pitts started beating on the car windows, however, Lucero drove away.

---

[2] The trial court ordered the victim's last name be redacted. Accordingly, we will refer to her throughout the opinion by her first name, no disrespect intended.

Lucero stabbed Kim twice, once in her right breast and into her right atrium and once near her left armpit. The breast wound was life threatening, but Kim survived after several hours of heart surgery and 10 days in the hospital.

The information charged Lucero with attempted premeditated murder (count 1), carjacking (count 2), and aggravated assault (count 3). The information alleged that as to these three counts Lucero personally used a deadly weapon (§ 12022 subd. (b)(1)), and he inflicted great bodily injury (§ 12022.7, subd. (a)). In addition, the information alleged Lucero had previously been convicted of a prior serious felony (§ 667, subd. (a)(1)), a prior strike (§ 667, subds. (d), (e)(1), 1170.12, subds. (b), (c)(1)), and a prison prior (§ 667.5, subd. (b)).

Lucero waived jury trial on his prior conviction and admitted the truth of the strike, the serious felony, and the prison prior allegations. The jury determined Lucero was guilty of count 1, but did not find the attempted murder to be premeditated. The jury returned guilty verdicts and true findings on counts 2 and 3 and the other enhancements.

The trial court sentenced Lucero to consecutive terms of nine years on count 1 (doubled to 18 years pursuant to the Three Strikes Law), three years and four months on count 2, four years total for the deadly weapon allegations, three years for the great bodily injury allegations, five years for the serious felony enhancement, and one year for the prison prior. The court stayed the prison term on count 3 and the remaining enhancements. Lucero's total prison sentence was for 34 years and four months.

## II

### A. *Concededed Sentencing Errors*

Lucero argues the trial court erred in imposing a one-year term for his prison prior under section 667.5, subdivision (b), in addition to the five-year term for his serious felony conviction. The Attorney General agrees and so do we. (See *People v.*

4

*Jones* (1993) 5 Cal.4th 1142, 1150, 1153 [court cannot impose five-year prior serious felony and one-year prior prison term enhancements based on same prior conviction].)

Lucero also asserts the court erred in staying the term for the deadly weapon enhancement with respect to count 3 (aggravated assault). The Attorney General agrees the sentences should have been stricken (not stayed) because Lucero's use of a deadly weapon was an element of the aggravated assault charge. We agree. Section 12022, subdivision (b)(1), expressly provides the one-year enhancement should not be imposed if "use of a deadly or dangerous weapon is an element of [the underlying] offense."

In summary, we hold the judgment must be modified to strike the one-year prison prior sentence, and the deadly weapon enhancement on count 3. We remand the case to the trial court for the limited purpose of correction of the abstract of judgment, and the forwarding of a corrected abstract to the Department of Corrections.

B. *Section 654 Issues*

Lucero maintains his sentence for carjacking (count 2) and the deadly weapon enhancement accompanying that count must be stayed pursuant to section 654. He contends the attempted murder (count 1) was incidental to the carjacking offense. Alternatively, Lucero argues the deadly weapon enhancement on count 1 must be stayed because section 654 bars multiple weapon enhancements for the use of a single deadly weapon for counts 1 and 2. We conclude only Lucero's second argument has merit.

"It is well settled that section 654 protects against multiple punishment, not multiple conviction. [Citation.] The statute itself literally applies only where such punishment arises out of multiple statutory violations produced by the 'same act or omission.' [Citation.] However, because the statute is intended to ensure that defendant is punished 'commensurate with his culpability' [citation], its protection has been

5

extended to cases in which there are several offenses committed during 'a course of conduct deemed to be indivisible in time.' [Citation.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 335 (*Harrison*).)

"It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible. [Citations.] We have traditionally observed that if all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once. [Citation.]" (*Harrison, supra,* 48 Cal.3d at p. 335.)

"If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' [Citation.] Although the question of whether defendant harbored a 'single intent' within the meaning of section 654 is generally a factual one, the applicability of the statute to conceded facts is a question of law. [Citation.]" (*Harrison, supra,* 48 Cal.3d at p. 335.)

Lucero maintains, "Although a 'gratuitous' act of violence against an unresisting victim may not qualify, . . . courts have emphasized that a violent offense committed only to accomplish or facilitate another crime remains subject to section 654's prohibition against multiple punishment." (Fn. omitted.) He asserts the crimes charged in count 1 and count 2 formed part of a single course of conduct and shared a single primary objective to take Kim's car. He maintains the stabbing was not a separate violent act or series of acts, but was merely part of his effort to accomplish the carjacking. He points to the prosecutor's statement in closing argument that Lucero stabbed Kim so he could obtain her car. He notes the record contains only evidence he intended to kill Kim to facilitate the carjacking.

6

Lucero relies on *People v. Chacon* (1995) 37 Cal.App.4th 52 (*Chacon*). That case involved two youths (Lopez and Chacon), confined at the California Youth Authority, who broke from a group, ran to the library, and hit the librarian in the face. (*Id*. at pp. 56, 58, 64, fn.5.) Lopez dragged the librarian, held a shank to her neck, and threatened to kill her. Chacon demanded a pick-up truck and also threatened to kill the librarian. Lopez then applied pressure to the librarian's neck, which caused her to pass out, and Chacon stabbed her in the stomach with a shank. A correctional officer gave the two youths the truck and they fled with the librarian. (*Id*. at pp. 58-59.)

A jury found Chacon and Lopez guilty of eight felonies. Five counts involved the librarian (assault with a deadly weapon, aggravated kidnapping for ransom, attempted kidnapping, false imprisonment of a hostage, and false imprisonment by violence). One count, assault with a deadly weapon, related to another staff member, and another count, extortion, related to the officer who supplied the truck. (*Chacon, supra*, 37 Cal.App.4th at pp. 56-58.) The trial court sentenced Chacon and Lopez to life without the possibility of parole on the aggravated kidnapping count. (*Id*. at p. 57.) The trial court imposed separate determinate sentences on each of the other seven counts, staying four of those sentences pursuant to section 654. (*Id*. at p. 57.)

On appeal, Chacon and Lopez argued the sentences on the remaining four counts relating to the librarian should also have been stayed under section 654. (*Chacon, supra*, 37 Cal.App.4th at p. 65.) The appellate court agreed punishment for extortion, escape by force and violence, and assault on the librarian should have been stayed. (*Id*. at p. 66.) It reasoned, "kidnap for ransom, extortion, and escape were part of an indivisible transaction having a single objective: escape." (*Ibid.,* fn. omitted.) Citing *People v. Nick* (1985) 164 Cal.App.3d 141, 147 (robbery committed after escape completed), and *People v. Bailey* (1974) 38 Cal.App.3d 693, 701 (separate punishment for kidnapping and escape

proper where escape perfected before kidnapping), the *Chacon* court noted separate punishment for those offenses is possible and would have been proper "[h]ad appellants effected the escape before the kidnapping and extortion . . . ." (*Id*. at p. 66, fn. 7.) It noted a separate punishment was permissible for the assault on the other staff member because that offense involved a separate victim. (*Id*. at pp. 66-67.) In the *Chacon* case the court rejected the Attorney General's contention the assault on the librarian represented gratuitous, unnecessary violence that could be punished separately. (*Id*. at p. 66, citing *People v. Nguyen* (1988) 204 Cal.App.3d 181, 190-191 [separate punishment for shooting store clerk after store robbery completed].) The court held that while the conduct was "atrocious," the violence was committed to force the officers to supply the truck while the aggravated kidnapping was ongoing. (*Chacon, supra*, 37 Cal.App.4th at p. 66.)

This case before us is distinguishable. In *Chacon*, the acts of violence against the librarian were part of an indivisible course of conduct aimed at escaping. Here, the evidence showed Lucero approached Kim, demanded her keys, obtained her keys and then rather than taking her car, he stabbed her two times. The stabbing occurred after Lucero achieved his goal of obtaining access to the car. It was not part of an indivisible course of conduct aimed at furthering the carjacking. Rather, the assault was a gratuitous act of violence towards an unresisting victim.

We conclude that substantial evidence supports the trial court's finding of divisibility and decision to punish defendant separately for the assault and the carjacking. The court aptly stating in its ruling, "that the objectives in this particular case were independent of each other; they were somewhat separate, although they happened rapidly."

8

Lucero's alternative argument has merit. He asserts that if section 654 did not prohibit separate punishments on counts 1 and 2, it would prohibit the imposition of separate deadly weapon enhancements on those counts. Both enhancements were based on Lucero's use of a knife against a single victim on a single occasion. We agree.

Section 654 applies to enhancements when the sentencing statutes do not address whether multiple enhancements can be imposed. (*People v. Ahmed* (2011) 53 Cal.4th 156, 159-161.) In this case, section 12022 does not specify whether separate enhancements can be imposed on two separate offenses and therefore we must apply section 654.

The Attorney General asserts, without citing to any supporting authority, that Lucero's "intent and objective" in using the knife to commit carjacking was independent from his intent to commit attempted murder. It concludes because there were separate objectives, separate punishments were appropriate and the trial court correctly imposed separate punishment for the section 12022, subdivision (b)(1), enhancement on count 1 (attempted murder), and the section 12022, subdivision (b)(2), enhancement for count 2 (carjacking). This argument overlooks the purpose of section 654 is to proscribe any attempt to impose multiple punishments for the same "act." Consideration of a defendant's "intent or objective" is only relevant to the determination of whether the transaction of several *acts* is nevertheless considered indivisible. "[I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once. [Citation.]" (*Harrison, supra,* 48 Cal.3d at p. 335.) There is no case authority supporting the Attorney General's contention a *single criminal act* can be punished multiple times because there may have been multiple objectives.

9

We find *People v. Reeves* (2001) 91 Cal.App.4th 14 (*Reeves*), instructive. There appellant was convicted of both burglary and assault of the victim Debra E. (*Id.* at p. 56.) Appellant did not challenge the separate punishments for these convictions, but argued the court's imposition of two great bodily injury enhancements (§ 12022.7) for a single act was error. As in our case, the Attorney General in *Reeves* argued the record supported two enhancements, "just as it supported the two sentences for burglary and assault, because appellant harbored multiple criminal objectives that can be punished independently." (*Reeves, supra,* 91 Cal.App.4th at p. 56.) The court rejected this argument, explaining, "[The Attorney General] directs us to no precedent approving of multiple sentence enhancements for a single assault against a single victim, even though the defendant committed additional crimes against that victim. On the contrary, the court in *People v. Moringlane*, expressly held that 'section 654 . . . prohibits the imposition of multiple enhancements for the single act of inflicting great bodily injury upon one person.' (*People v. Moringlane,* [(1982)] 127 Cal.App.3d [811,] 817; see also *People v. Alvarez* (1992) 9 Cal.App.4th 121, 127 ['[G]enerally only one enhancement for great bodily injury may be imposed where multiple offenses are committed against a single victim on a single occasion']; *People v. Culton* (1979) 92 Cal.App.3d 113, 117 ['The Attorney General has properly conceded that only one enhancement for great bodily injury is possible'].) [¶] In the absence of any evidence making the assault of Debra E. divisible (see, e.g., *People v. Dominick* (1986) 182 Cal.App.3d 1174, 1210 [permitting two enhancements where defendant committed two separate assaults on a single victim]), the trial court should not have imposed two great bodily injury enhancements under section 12022.7." (*Reeves, supra,* 91 Cal.App.4th at pp. 56-57.)

"[M]ultiple objectives do not turn a single act into more than one criminal act. A single criminal act, even if committed incident to multiple objectives, may be punished only once. [Citation.]" (*People v. Louie* (2012) 203 Cal.App.4th 388, 397.) Here, the two enhancements under section 12022, for personally using a deadly or

10

dangerous weapon were based on just *one* act, i.e., the stabbing of Kim. We agree with Lucero the judgment must be modified to stay the section 12022, subdivision (b)(1) enhancement on count 1 (attempted murder).[3]

III

The judgment is affirmed. The judgment is modified to strike the prison prior (§ 667.5, subd. (b)), and the deadly weapon enhancement (§ 12022, subd. (b)(1)) on count 3, and to stay the deadly weapon enhancement (§ 12022, subd. (b)(1)) on count 1. The clerk of the superior court is ordered to prepare a corrected abstract of judgment reflecting these modifications and to forward a copy of it to the Department of Corrections and Rehabilitation, Division of Adult Operations.

O'LEARY, P. J.

WE CONCUR:

MOORE, J.

THOMPSON, J.

---

[3] In Lucero's opening brief, he asks the court to stay the enhancement on count 1 (attempted murder), and in the reply brief, he asserts the enhancement on count 2 (carjacking) must be stayed. There is a difference of two years between the two enhancements. Section 12022, subdivision (b)(1), prescribes a one-year enhancement for crimes such as attempted murder (count 1), but section 12022, subdivision (b)(2), mandates a term of one, two, or three years for defendants convicted of carjacking (count 2). The court selected the upper term of three years. Section 654 mandates, "An act . . . punishable in different ways . . . shall be punished under the provision that provides for the *longest potential term* of imprisonment . . . ." (Italics added.) Accordingly, we conclude the one-year enhancement on count 1 must be stayed.

11